IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**SANTA FE SKI COMPANY,**

        **Plaintiff,**

v.                                                                     CIV No. 01-0714 LH/LCS

**BOARD OF COUNTY**
**COMMISSIONERS OF SANTA FE**
**COUNTY,**

        **Defendant,**

v.

**UNITED STATES OF AMERICA, acting by**
**and through the UNITED STATES FOREST**
**SERVICE, and DALE BOSWORTH, Chief**
**of the United States Forest Service,**

        **Involuntary Plaintiffs.**


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment (Docket No. 41), on Plaintiff's Motion for Partial Summary Judgment (Docket No. 39), and on the United States' Motion to Dismiss (Docket No. 40). The Court, having considered the pleadings submitted by the parties, the oral arguments of counsel, the applicable law, and otherwise being fully advised, finds that Defendant's motion is **partially granted and partially denied**, Plaintiff's motion

1

is **granted**, and the motion of the United States is **denied as being moot**.

**I. Background**

Given the Court's ruling on Plaintiff's motion to strike, the relevant facts are undisputed in this matter.

The Plaintiff operates the Santa Fe Ski Area in the Santa Fe National Forest under a Special Use Permit granted by the United States Forest Service. The ski area is located entirely on federal land, which is overseen by the Forest Service.

The Secretary of Agriculture is required to develop land use plans for units of the National Forest System. 16 U.S.C. § 1604. These are also referred to as resource management plans. *Id.*; 43 C.F.R. § 1601.1(a). The Forest Service promulgated the Santa Fe National Forest Plan in mid-1987. Pl.'s Mem. in Supp. of Mot. for S.J., Ex. 6. In March of 1997, the Plaintiff submitted, and the Forest Service approved, a Master Development Plan which included plans to expand the ski area. *Id.*

"Approval of a resource management plan is considered a major Federal action significantly affecting the quality of the human environment." 43 C.F.R. § 1601.0-6. This triggers the Environmental Impact Statement ("EIS") requirement of the National Environmental Policy Act ("NEPA"). 42 U.S.C. § 4332(2)(C). As required, the Forest Service produced an EIS and approved the Plaintiff's plans for expansion of the ski area. Pl.'s Mem. in Supp. of Mot. for S. J; Ex. 7. The Amended Record of Decision indicated the Forest Supervisor's choice of what had become known as Alternative 3 of the Master Development Plan. *Id.* The Plaintiff amended its Master Development Plan accordingly, and the Forest Service approved it. Pl.'s Mem. in Supp. of Mot. for S. J.; Exs. 8 and 9.

2

The approved Master Development Plan provided for construction of a new parking lot at the ski area. In 1996, the Defendant filed suit to compel the Plaintiff to apply for a Santa Fe County development permit, pursuant to the County Land Development Code,[1] to construct the parking lot. The suit also sought to enjoin the Plaintiff from beginning construction without a development permit issued by the County. The Defendant eventually granted the Plaintiff the variances from its Land Development Code necessary to build the parking lot, and the suit was dismissed without prejudice.

The Plaintiff submitted an application for a development permit for the balance of the expansion project to the Defendant in February, 2001.[2] The Forest Service had authorized the Plaintiff to proceed with construction and verified that the environmental mitigation measures and mechanical and structural plans complied with Forest Service standards. The Forest Service informed the Defendant that it had authorized the Plaintiff to proceed with the project and would monitor it to ensure compliance with environmental standards. Pltf's Compl. at ¶¶ 38-44. Specifically, the Forest Service informed the Defendant that it had conducted detailed, site-specific environmental analysis of the Deception Peak project, including review by Forest Service resource specialists, addressing issues of tree cutting and removal, soils, and specification of detailed and extensive mitigation measures. *Id.*.

The County Development Review Committee recommended that the Defendant grant the

---

[1] In 1996, the Defendant enacted amendments to the County Land Development Code which, in pertinent part, designated that no structures could be built on natural slopes of thirty percent or greater, set standards for structures built on a natural slope of greater than twenty percent, and provided that no significant tree could be removed from slopes greater than thirty percent.

[2] This application related to construction of a triple chairlift up Deception Peak, ski trail expansion and creation, and additional snowmaking capacity.

variances and the permit, provided that the Plaintiff agree to a number of conditions, which it did. *Id.* at ¶¶ 46-48. Despite that recommendation, the Defendant unanimously denied the variances. *Id.* at ¶ 49.

The Plaintiff filed suit, seeking declaratory and injunctive relief that would permit it to proceed with construction on the ski area expansion project and prevent the Defendant from interfering with that project. It also moved for partial summary judgment on the Supremacy Clause issues in its complaint. The Defendant moved for summary judgment on all of the Plaintiff's claims. Additionally, the United States, the Forest Service, and Dale Bosworth, Chief of the Forest Service, moved to be dismissed, given their involuntary joinder under FED. R. CIV. P. 19.

## **II. Jurisdiction**

Plaintiff's complaint purports to invoke the Court's jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

First of all, Section 1983 is not a jurisdictional statute. It is a remedial statute and cannot provide the basis for federal court jurisdiction. This section was enacted to ensure a "right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 611 (1979). The deprivation of a right secured by the Constitution and federal laws is a threshold requirement of § 1983. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Count I of the complaint alleges a violation of the Supremacy Clause. The Supremacy Clause itself is not a source of federal rights. It describes rights secured by the Constitution or by an act of Congress. It acts to secure federal rights by according them priority whenever they conflict with state

4

law. *Chapman* at 613. Thus, § 1983 does not provide a remedy for claims resulting from violations of the Supremacy Clause. *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1476-77 (10th Cir. 1984)(*rev'd other grounds*).

On the other hand, § 1331 is a jurisdictional statute and it relates to federal-question jurisdiction. District courts have original federal question jurisdiction over complaints that contain a claim that arises under federal law. 28 U.S.C. § 1331. To support the exercise of federal-question jurisdiction, Plaintiff must present a "substantial" federal claim. *Hagans v. Lavine*, 415 U.S. 528, 536-38 (1974). The Court lacks subject-matter jurisdiction "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

Clearly Count II of the complaint presents a "substantial" federal claim.[3] It alleges that Defendant's denial of Plaintiff's requested variances constitutes a land use decision, that the denial was beyond the Defendant's jurisdiction as applied to activity on federal land, and that it violated Plaintiff's rights to procedural and substantive due process. (Compl. ¶ 61). Plaintiff alleges that this denial was inconsistent, irrational, arbitrary and capricious. These allegations are sufficient to support the exercise of federal-question jurisdiction.

---

[3] Although Count III seeks a declaratory judgment, Plaintiff does not specifically mention the Declaratory Judgment Act, 22 U.S.C. § 2201. In any event, even if Plaintiff's intent was a suit under the Declaratory Judgment Act, the Act does not confer jurisdiction upon federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Consequently the power to issue declaratory judgments must lie in some independent basis of jurisdiction. *See Cardtoons v. Major League Baseball Players Assoc.*, 95 F.3d 959, 964 (10th Cir. 1996). In this instance, Plaintiff's claims of due process violations suffice.

## III. Defendant's Motion for Summary Judgment

Defendant's motion seeks dismissal of all four counts of the complaint, most notably on the grounds that Plaintiff cannot sufficiently establish a claim for relief under § 1983, and that no cause of action *per se* exists for purported violations of the Supremacy Clause. Defendant also seeks legislative immunity for its denial of the variances. As grounds for its denial of Plaintiff's request, Defendant argues that the Environmental Impact Statement failed to adequately consider Native American environmental concerns regarding hunting and religious practices, as well as recent developments in the local environment, such as the Cerro Grande Fire and drought conditions.

### A. Legislative Immunity

Defendant first argues that it is entitled to summary judgment because "[t]he Federal Constitution, and the common law protect legislators from liability for their legislative activities." Dft's Brief in Supp. Mot. for S.J. at 4. This argument is inapposite, given that no legislators are parties to this action. The Defendant here is the Board of County Commissioners, and it enjoys no such immunity. The Defendant itself provided the precedent for this proposition: "Municipalities themselves can be held liable for constitutional violations. . . ." *Bogan v. Scott-Harris*, 523 U.S. 44, 53 (1998).

### B. Due Process Claims

As noted above, in order to prevail on its 42 U.S.C. § 1983 claim, Plaintiff must demonstrate that it suffered a deprivation of a federally protected right. Plaintiff claims deprivations of its Fourteenth Amendment procedural and substantive due process rights. Defendant argues that

Plaintiff cannot establish either of these types of due process rights.

Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision. *Hyde Park Company v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

In evaluating the due process issue, in addition to Defendant's motion for summary judgment and its attendant pleadings, the Court has considered the pleadings associated with Plaintiff's motion for partial summary judgment. The Court has paid close attention to the undisputed facts, considering the matter as a whole, given the overlap of briefing of the issue. For the reasons that follow, despite Plaintiff's failure to move for summary judgment on the issue of due process, the Court concludes Plaintiff *has* established a protectible property right sufficiently, but *has not* established a violation of that right that rises to the level of a constitutional violation.[4] It is the Court's opinion that Defendant has had ample opportunity to address this issue, and that such a ruling imposes no unfairness to Defendant.

### (1)  Plaintiff Has a Protectible Property Interest

It is well established in the Tenth Circuit that to prevail on either type of due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property

---

[4] The Court may grant partial summary judgment here to the non-moving party on this issue, the Plaintiff, given the fact that the parties have had a full and fair opportunity to present everything they have, both in written form and at this Court's January 27, 2004 hearing. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999)(as long as some party has made motion for summary judgment, court may grant summary judgment to nonmoving party, without notice, provided parties have had full and fair opportunity to present everything they have). *See* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.10[2][b].

interest. *Hyde Park Company* at 1210. The Supreme Court defines "property" in the context of the Fourteenth Amendment's Due Process Clause as a "legitimate claim of entitlement" to some benefit. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The constitutional purpose of Due Process "is to protect a substantive interest to which . . . [a party] has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Property interests "are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. Thus, consistent with Supreme Court precedent, a right to a particular decision reached by applying rules to facts constitutes "property." *See Fleury v. Clayton*, 847 F.2d 1229, 1231 (7th Cir. 1988), *cited in Hyde Park Company* at 1210.

As the Tenth Circuit explained in *Hyde Park Company*, when a party challenges a land use decision by a governing body on due process grounds, the entitlement analysis presents a question of law. *Id*. The analysis must focus on "whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs." *Norton v. Village of Corrales*, 103 F.3d 928, 931-32 (10th Cir. 1996), *quoted in Hyde Park Company* at 1210. This analysis centers on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome. *Jacobs, Viscosi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir. 1991). To prevail in this case, Plaintiff must show that under the applicable law, Defendant had limited discretion to stop the project.

I conclude that the undisputed facts establish that Plaintiff had a preexisting entitlement to complete this project, pursuant to the extensive federal statutory scheme which required a lengthy federal approval process. In the context of this federal scheme, Plaintiff secured a benefit, which

gave rise to constitutional due process guarantees. The Forest Service had published an EIS, including the Deception Peak project and expressly authorized the project after project-specific environmental and structural review. The applicable federal process eliminated Defendant's discretion in this matter, establishing a protectible property right, as a matter of federal constitutional law.

For these reasons, as a matter of law, based on the undisputed facts, the Court concludes that Plaintiff had a protectible property interest, that is, a legitimate claim of entitlement to complete the project as it had been approved by the Forest Service.

### (2) Defendant's Actions Did Not Violate this Protectible Interest

Once a party establishes facts that show a property interest warranting due process protection, it must then establish facts sufficient to show that the challenged governmental action was "arbitrary and capricious." *Jacobs, Visconsi & Jacobs, Co.* at 1119. In this context, arbitrary and capricious "does not mean simply erroneous." *Norton* at 932. Rather, the scope of this protection is such that a claim can survive "only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power . . . . In short, the doctrine of substantive due process is a constitutionally imposed limitation, which is intended only to prevent government from abusing [its] power, or employing it as an instrument of oppression." *Id.* (*quoting Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 829 (4th Cir. 1995).

In support of its motion, Defendant states that Plaintiff's request for a variance was denied due to environmental concerns raised by the proposed construction. (Dft's Stmt. Undisp. Fact, #4;

*See* Certified Minutes of May 16, 2001 Meeting of County Commissioners, Ex. A to Deft's Reply Brief). This stated purpose could conceivably have a rational relationship to the exercise of the Defendant's traditional powers. I therefore conclude that Defendant has met its burden of production under Rule 56(c).[5]

As Plaintiff itself notes, it next becomes incumbent on it to demonstrate the existence of "evidence on which the jury could reasonably find for the [Plaintiff]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) requires the Plaintiff's response, by affidavits or otherwise, to set forth specific facts showing that there is a genuine issue for trial. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(f).

Plaintiff states that it failed to counter-move on this issue because the due process claims are "too fact-dependent for summary judgment determination." *See* ¶ 3, Affidavit of Daniel H. Friedman, Esq. Pursuant to F.R.C.P. Rule 56(f) (Docket No. 46)[6]. Plaintiff also did not attempt to factually refute Defendant's motion for summary judgment. In fact, the stated purpose of Friedman's affidavit was to factually establish why his client, the Plaintiff, was unable to present facts in support of Plaintiff's opposition to Defendant's motion on the due process claims (*Id.*, ¶¶ 4, 5).

---

[5] As discussed later in this opinion, Plaintiff objects to reliance on these minutes as support for Defendant's position in its motion. Although Plaintiff raises a plethora of objections to the minutes in Friedman's affidavit, Plaintiff does not reach the threshold issue: whether or not these minutes are admissible evidence that can be considered in support of Defendant's motion for summary judgment. The Court concludes that they would be admissible or usable at trial, as a record under one of the subparagraphs of FED.R.EVID. 803.

[6] In its reply, filed on January 30, 2002, Defendant objects to this affidavit, noting that it was filed 2 days earlier, 21 days after submission of Plaintiff's response brief. Given the lateness of this submission, Defendant stated that it had not had adequate time to respond to the affidavit. Defendant notes that the affidavit fails to demonstrate how the requested discovery would preclude the entry of summary judgment. *See* Deft's Reply Brief at 4.

This affidavit acknowledges that Defendant relies on the minutes of the County Commission meeting, as an evidentiary basis for Defendant's assertion that Plaintiff's due process rights were not violated. (*Id*. ¶ 6). The affidavit notes that in response to a request for production for the audio tapes of the meeting, the County responded that it had been unable to locate the tapes and has never produced them to Plaintiff. (*Id*. ¶ 9). Plaintiff makes general complaints about the preparation method of the minutes, such as paraphrasing of speakers' statements, as well as the absence of means to ascertain their accuracy or completeness (*Id*. ¶¶ 7, 8), and claims that given its lack of access to the actual tapes, that Plaintiff is unable to frame its legal position in light of those proceedings. (*Id*. ¶ 10).

In this situation, ordinarily the Court would expect a party in Plaintiff's position to file a motion to compel production or to submit deposition testimony of the commissioners who made the decision to deny the variance, in an attempt to factually establish unconstitutional reasons for denying the variance. Friedman's affidavit complains that, pursuant to a magistrate order, Plaintiff was only permitted to conduct paper discovery (*Id.*, ¶ 13). The Court notes that this order was filed in response to a joint motion to modify the scheduling order, which includes the parties' request that discovery be minimal and limited prior to submission of summary judgment motions. (Ex. B to Deft's Reply).

Defendant's articulated reason for denying the variance could have a rational relationship to a legitimate state interest. The constitutionally imposed limits are intended only to prevent government from abusing its power, or employing it as an instrument of oppression, sufficient to raise any ordinary tort to the stature of a constitutional violation. The Court, having reviewed all of the factors set forth in Friedman's affidavit and otherwise in the record, concludes that Plaintiff has,

without adequate justification, failed to demonstrate the existence of evidence on which a jury could reasonably find for Plaintiff. In opposition to Defendant's motion, Plaintiff has simply failed to produce any evidence to support its claim that Defendant deprived it of its property interest for an arbitrary or capricious reason. Given this lack of a response under Rule 56, Defendant's motion must be granted and Plaintiff's claim for a substantive due process violation must be dismissed.

Similarly, Defendant's motion states that on May 16, 2001, Defendant conducted a lengthy hearing regarding Plaintiff's request for variances (Stmt. of Undisp. Facts, #2). Plaintiff had notice of and participated fully in this hearing. Again, Plaintiff has presented nothing to establish that Defendant engaged in unfair procedures to reach its decision. Given Plaintiff's failure to adequately respond to this second due process argument raised by Defendant, Plaintiff's claim for procedural due process violation must be dismissed.

## IV. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on Count I, arguing that Defendant's denial of its requested variances from the County Land Development Code violates the Supremacy Clause of the United States Constitution. Plaintiff alleges that this denial presents an obstacle to purposes delegated to the Forest Service to make rules and regulations for use of National Forests, to issue permits for the operation of ski areas and facilities, and to determine what is environmentally acceptable on federal land through the environmental impact statement process. Plaintiff further alleges that Defendant's action violates this clause because it prohibits a use of federal land that the Forest Service has expressly permitted. Finally, the Plaintiff notes the conflict between the desire of the Forest Service to install certain amenities at the ski area, and the fact that the County Land

Development Code bans the project.

The United States Constitution and the laws promulgated thereunder are the supreme law of the land. U.S. CONST. ART. VI, CL. 2. It is a familiar and well-established principle that the Supremacy Clause invalidates state laws that "interfere with, or are contrary to," federal law. *Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 211 (1824). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by .... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947).

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co*., 430 U.S. 519, 525 (1977). In the absence of express pre-emptive language, a state's law may still be preempted implicitly, in one of two ways. Plaintiff asserts only one of these avenues[7] : "conflict preemption" which occurs where it is impossible to comply with both the federal and state laws, or the state law stands as an obstacle to the accomplishment of Congress's objectives. *Id*.; *see United States v. Denver, City and County of*, 100 F.3d 1509, 1512 (10th Cir. 1996).[8]

The Supreme Court has repeatedly held that state laws can be pre-empted by federal regulations as well as by federal statutes. *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985). Also, for purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws. *Id*.

---

[7] See Pltf's Am. Reply Mem. at 10.

[8] The other avenue is "field preemption" which occurs where the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for the States to supplement it. *Barnett Bank of Marion County v. Nelson*, 717 U.S. 25 (1996).

Defendant admits that it does not have the ability to regulate zoning on federal land, but argues that it does have the ability to regulate development plan issues. Defendant argues that this case does not involve application of the Supremacy Clause because NEPA permits state and local entities to provide input and to impose additional requirements to environmental policy for public land, citing 42 U.S.C. § 4331. Further, Defendant argues that the National Forest Ski Area Permit Act of 1986 requires public involvement in the decision-making and planning for the national forests, citing 16 U.S.C. § 497b, *et. seq*. Finally, Defendant argues that federal agencies must refrain from acting against state law, citing 42 U.S.C. § 4334. Based on these statutes, Defendant maintains that Congress did not intend to oust any local government from acting, but on the contrary, Congress intended that all parties work together.

Plaintiff maintains, and the Court agrees, that "conflict preemption" applies in this case because it is impossible for Plaintiff to simultaneously build the project as authorized by the Forest Service and comply with Defendant's prohibitions. These land choices are the province of the Forest Service, not the Defendants.

Furthermore, this local regulation imposes an obstacle to the actual use approved by the Forest Service. In considering whether the County Land Development Code frustrates the purposes of federal law, the Court has concluded that the local regulation is not consistent with the structure and purpose of the federal statutes as a whole. *See Blue Circle Cement, Inc. v. Board of County Commissioners*, 27 F.3d 1499, 1505 (10th Cir. 1994). Congressional delegation of authority to the Forest Service to regulate national forests is well established. The Forest Service evaluated the Deception Peak project in light of the statutory scheme and goals outlined above, and was approved following the lengthy and rigorous review process.

The Court recognizes that the Special Use Permit granted to Plaintiff provides that Plaintiff will "assume responsibility for compliance with . . . all . . . county and municipal laws, ordinances, or regulations which are applicable to the area or operations covered by this permit." (Ex. 1). This language was tempered by language in the 1995 Final EIS which recognized that compliance with local requirements yields where a Supremacy Clause conflict arises:

> The Ski Area is required by its Special Use Permit to comply with all present and future state and local laws, ordinances, or regulations that are applicable to the area of its operation *to the extent they are not in conflict with federal law or policy.*

(Ex. 5, p. I-18, emphasis added.)

Clearly Congress has given the Forest Service broad power to regulate Forest System land. *See, e.g.,* 7 U.S.C. § 1011. The statutory framework for this regulation is discussed at length above. This project was developed and approved through nine years of federal Forest Plans, the environmental impact statement and master development plan processes. Defendant's denial of the variances sought by Plaintiff prevents implementation of the Deception Peak project as presently designed and approved by the Forest Service. This refusal to grant the variances thwarted the federal approval process in a material way. The County Land Development Code, as applied by Defendants, is in actual conflict with the approval of the project by the Forest Service. This amounts to "conflict preemption" and a violation of the Supremacy Clause. Plaintiff may proceed with the ski area expansion project, as approved by the Forest Service, without requesting or obtaining a county development permit or variances from the County Land Development Code. Because Plaintiff is entitled to judgment as a matter of law on the basis of uncontroverted material facts on its preemption claim under the Supremacy Clause, the Court grants summary judgment to Plaintiff.

### V. Attorney Fees

Plaintiff has applied to this Court for attorney fees pursuant to 42 U.S.C. § 1988. As noted above, § 1983 does not provide a remedy for claims resulting from violations of the Supremacy Clause. "It follows that an attorney's fee claim under § 1988, based on a § 1983 action involving an alleged violation of the . . . Supremacy Clause of the Constitution of the United States, can have no merit." *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1467-77 (10th Cir. 1985)(*rev'd other grounds*). *See also, Dennis v. Higgins*, 498 U.S. 439, 450 (1991). For this reason, Plaintiff's motion for attorney fees is **denied**.

### VI. Motion of United States to Dismiss

This matter is now resolved, rendering it unnecessary to decide this motion. Accordingly, it is **denied as being moot.**

**WHEREFORE**, for the reasons above-stated, Defendant's Motion for Summary Judgment (Docket No. 41) is **partly denied and partly granted**, Plaintiff's Motion for Partial Summary Judgment (Docket No. 39) is **granted**, and the United States' Motion to Dismiss (Docket No. 40) is **denied as being moot.**

**IT IS THEREFORE ORDERED THAT:**
(1) Plaintiff's claims for violations of substantive and procedural due process are **dismissed**;
(2) Plaintiff's claim for violation of the Supremacy Clause of the United States Constitution is **granted as a matter of law**;
(3) Plaintiff is entitled to judgment as a matter of law on its preemption claim under the Supremacy Clause. Accordingly, Plaintiff is hereby granted permission to proceed with the ski area expansion project, as approved by the Forest Service, without requesting or

obtaining a county development permit or variances from the County Land Development Code.

(4) Plaintiff's request for attorney fees is denied.

**IT IS FURTHER ORDERED** that a Final Judgment consistent with the Memorandum Opinion and Order shall be issued immediately.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**